UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LALONNIE C. HURATIAK,<br><br>                    Plaintiff,<br>         vs.<br><br>NEWREZ, LLC d/b/a SHELLPOINT MORTGATE SERVICING<br><br>                    Defendant. | CIVIL ACTION<br><br>NO. 2:23-cv-00431-CMR<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Lalonnie C. Huratiak ("Plaintiff" or "Ms. Huratiak"), individually and on behalf of all others similarly situated, through her undersigned counsel, files this Class Action Complaint against Newrez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and alleges as follows:

### INTRODUCTION

1.      This case addresses a long-standing and nationwide practice by Shellpoint of assuming the servicing rights of long dormant, abandoned and/or written off home-equity lines of credit and/or second mortgages, reviving those accounts, inflating their balances without proper notice and in violation of the original contracts, and engaging in aggressive, unfair and deceptive collection activities related to them, including the pursuit of foreclosure actions (a/k/a "zombie mortgages"). Many of these zombie mortgages were originated prior to the 2008 foreclosure/housing crisis through aggressive, predatory and unscrupulous lending practices by notorious, and now defunct lenders, such as Countywide Home Loans. The unlawful collection of these zombie mortgages inflicts economic damages and a variety of hardship and harm on consumers throughout the country, including the Plaintiff here.

1

**PARTIES**

2. Plaintiff Lalonnie C. Huratiak is a natural person residing at 34 Crystal Lane, Bangor, Pennsylvania (the "Property").

3. Defendant Newrez, LLC d/b/a Shellpoint is a limited liability company organized under the laws of Delaware that has a principal place of business located at 1100 Virginia Dr., Suite 125, Fort Washington, PA 19034. Shellpoint is the successor-in-interest to Specialized Loan Servicing, LLC ("SLS") through Shellpoint's parent company, Rithm Capital, its acquisition of SLS, and the merger between SLS and Shellpoint, effective on May 1, 2024. Defendant Newrez, LLC d/b/a Shellpoint is referred to herein as Shellpoint and/or SLS.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the acts and transactions that establish this Complaint occurred in this District, where Ms. Huratiak resides.

**FACTS**

6. Ms. Huratiak obtained a Home Equity Line of Credit (a "HELOC") and second mortgage on her home in 2007 from Countrywide Home Loans in the principal amount of $93,900.00 (the "Countrywide HELOC"). A copy of the HELOC is attached hereto Exhibit A.

7. The HELOC was a standardized form contract utilized by Countrywide and other lenders throughout the country for the issuance of HELOCS and second mortgages.

8. Under the relevant terms of the Countrywide HELOC, Countrywide and its successors in interest and assignees were and are obligated to provide Plaintiff and with "periodic statements" of any and all amounts due prior to Plaintiff's obligation to pay them as set forth by the following terms, among others:

      a) Clause 3.B. "At a minimum, you will send me a periodic statement monthly. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payment."

      b) Clause 4, "You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement."

      c) Clause 7, "I agree to pay the charge listed below, which shall constitute additional Indebtedness under this agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed."

9. Due to financial difficulties, Ms. Huratiak stopped making payments towards the HELOC in October 2011, and later filed for bankruptcy in 2013 in the United States Eastern District Bankruptcy Court of Pennsylvania.

10. At the time that Ms. Huratiak filed for bankruptcy, the balance due on the Countywide HELOC was approximately $89,000.00.

11. In or around 2012, Ms. Huratiak stopped receiving monthly periodic statements for the Countrywide HELOC in violation of its terms cited above.

12. Ms. Huratiak's bankruptcy was dismissed in 2015.

13. On or about October 16, 2018, Bank of New York Mellon ("BNYM"), as trustee of the CWHEQ Revolving Home Equity Loan Trust, Series 2007-ABNYM (hereinafter "the Trust") acquired the Countrywide HELOC while it was in default.

14. SLS started servicing the Countrywide HELOC in December 2021 at a time when it was in default.

15. From 2012 until December of 2021, Ms. Huratiak had not received any periodic statements or communications about the Countrywide HELOC from anyone.

16. The first time Ms. Huratiak heard from any servicer about the Countrywide

HELOC was when she received from SLS a Notice of Default and Notice of Intent to Foreclose on December 10, 2021 ("the Notice").

17. Among other things, the Notice stated that Ms. Huratiak needed to pay $63,934.63 to cure an arrearage on her HELOC for the time period 10/25/11 through 12/10/21 or the loan would be accelerated and her home referred for foreclosure.

18. The Notice failed to identify the owner of the Countrywide HELOC.

19. The Notice further stated the wrong amount of arrears, the wrong balance and the wrong amounts owed.

20. The Notice was an attempt to collect a debt because it informed Ms. Huratiak that failure to pay the amount listed in the letter would result in "commencement of foreclosure".

21. On November 26, 2024, Shellpoint on behalf of BNYM filed a foreclosure complaint (the "foreclosure action") against Ms. Huratiak in the Northampton County Pennsylvania Common Pleas Court claiming that she owed the following sums to bring her second mortgage current:

| | |
|---|---|
| Principal Balance: | $89,938.20 |
| Interest to 12/12/2024: | $92,394.76 |
| TOTAL: | $182,332.96 |

Exhibit B.

22. The foregoing $92,394.76 amount that Shellpoint claimed as due was inaccurate because:

    a) It included interest, fees and costs that accrued during the time that Countrywide, SLS/Shellpoint and their predecessors were required to send Ms. Huratiak monthly periodic statements but failed to do so, and therefore was not legally collectible.

    b) Even if it were collectible it stated an inaccurate calculation that inflated the arrears owed under the terms of the Countrywide HELOC.

23. Ms. Huratiak had no way to know that SLS was assessing interest on her loan because SLS never sent Ms. Huratiak monthly periodic statements, even though she was entitled to receive them under the terms of her Countrywide HELOC. Instead, SLS had a uniform policy and procedure of not sending monthly statements to borrowers whose Countrywide HELOC loans had been in arrears for a period of years after default by the borrower.

24. Statements would have periodically apprised Ms. Huratiak of the balance of her loan, including interest that was allegedly accrued after the last alleged payment of 10/25/2011.

25. In fact, the Consumer Financial Protection Bureau ("CFPB") has stated that times of default are "precisely when a consumer most needs the periodic statement" to "document fees and charges to the consumer."[1] Simply put, "as long as such charges may be assessed, the consumer is entitled to receive a periodic statement."[2]

26. The CFPB has also identified the same issue with servicers like Shellpoint and SLS assessing interest and fees on long-dormant mortgages for periods in which they failed to provide monthly statements to consumers:

> Leading up to the 2008 financial crisis, many lenders originated mortgages to consumers without considering their ability to repay the loans. … One common piggyback mortgage product, known as an 80/20 loan, involved a first lien loan for 80 percent of the value of the home and a second lien loan for the remaining 20 percent of the valuation. … [In the event of default,] the second mortgage holder only receives proceeds from the foreclosure sale if there are any funds left after paying off the first mortgage. As a result, many second mortgage holders of piggyback loans, recognizing that a foreclosure would not generate enough money to cover even the first mortgage, charged their defaulted loans off as uncollectible and ceased communicating with the borrowers. … Many borrowers, having not received any notices or periodic statements for years, concluded that their second mortgages had been modified along with the first mortgage, discharged in

---

[1] 12 C.F.R. Part 1026 (CFPB Official Interpretations), https://files.consumerfinance.gov/f/201301_cfpb_final-rule_servicing-tila.pdf (last visited Oct. 2, 2024).

[2] *Id.*

bankruptcy, or forgiven. In recent years, as home prices have increased and borrowers have paid down their first mortgages, after years of silence, some borrowers are hearing from companies that claim to own or have the right to collect on their long-dormant second mortgages. These companies often demand the outstanding balance on the second mortgage, plus fees and interest, and threaten to foreclose if the borrower does not or cannot pay. [3]

27. Defendant's actions in demanding amounts for interest, late fees, collection costs and other charges in the Notice and foreclosure action for the time period when Ms. Huratiak was not receiving periodic statements breached the terms of the Countrywide HELOC and general contract principles, which prevent creditors and servicers from claiming amounts owed under a contract when they have failed to provide notice to the borrower of the accumulation of those amounts, especially, in this case, when they had 12 years to provide notice but failed to do so.

28. In addition, Defendant's actions in demanding amounts for interest, late fees, collection costs and other charges in the Notice and foreclosure action for the time period when Ms. Huratiak was not receiving periodic statements further breached the Countrywide HELOC because they violated "federal law" which governed the contract pursuant to section 17 D., as Truth-in-Lending Act ("TILA") and Regulation Z require creditors and the servicers like Shellpoint who work on their behalf to send monthly statements to borrowers. *See* 15 U.S.C. § 1637(b) ("The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth [certain disclosures, including charges assessed]."); 12 C.F.R. § 1026.5(b)(2) ("The creditor shall mail or deliver a periodic statement as required by § 1026.7 for each billing cycle at the end of which an account

---

[3] Consumer Financial Protection Bureau, Advisory Opinion re: 12 C.F.R. Part 1006 (2023), https://files.consumerfinance.gov/f/documents/cfpb_regulation-f-time-barreddebtadvisory-opinion_2023-04.pdf.

has a debit or credit balance of more than $1 or on which a finance charge has been imposed" and exempting open-end credit loans that have been charged off only if the creditor "will not charge any additional fees or interest on the account").

29. Plaintiff was forced to pay an attorney to defend her in the aforesaid foreclosure action.

30. The foreclosure action was an unfair and deceptive collection practice, and was not a lawful basis for Defendant to collect the debt including but not limited to the following reasons:

    a) Despite the Plaintiff being "The Bank of New York Mellon", the verification to the Complaint was electronically signed by Robert Harrell, a "document verification specialist" for NewRez, LLC. Because NewRez, LLC is not a party to the foreclosure action, the aforesaid verification fails to comply with Rule 1024(c), which requires that a verification be made by a party to the action.

    b) To the extent that NewRez, LLC claimed in the foreclosure action to be acting as an authorized attorney-in-fact for BNYM, it failed to disclose its fiduciary capacity in the foreclosure complaint's caption and allegations as required by Pa. R.C.P. No. 2002(a) & (b)(1).

    c) The foreclosure complaint failed to allege any assignment of the Countrywide HELOC note agreement with Plaintiff and instead BNYM for the trust alleges that the HELOC note agreement was "endorsed in blank" and that Plaintiff can enforce the "note" by virtue of its possession of the document.

31. In blatant disregard of its obligations under the Countrywide HELOC, Defendant failed to send monthly statements to Ms. Huratiak and others with Countrywide HELOCs like hers, yet continued to assess interest and fees to their accounts, causing HELOC balances to increase without prior notice to the borrowers.

32. SLS then sought to collect these inflated balances from consumers by sending them letters, including acceleration notices like the Notice sent to Ms. Huratiak, that stated that SLS would enforce the liens against their homes if the claimed amounts were not paid.

33. This conduct has significantly damaged Ms. Huratiak and countless other consumers who are at risk of losing significant equity in their homes because of the unlawful fees and charges that Shellpoint claims that they owe.

34. As a result of the foregoing events arising from Defendant's unlawful actions, Ms. Huratiak suffered the accompanying emotional distress of defendant's unlawful and inflated demands for payment, including but not limited to shame, humiliation, loss of sleep, frustration, and anger.

35. As a result, Ms. Huratiak brings class claims against Defendant for making false statements about the amount of her outstanding debt in violation of the contractual terms of her HELOC and Pennsylvania's Consumer Protection Law Unfair Trade Practices Act, 73 P.S. 201 *et seq*. and the Fair Credit Extension Uniformity Act, 73 P.S. 2270.5 *et seq*. She also seeks a declaratory judgment that Shellpoint is not entitled to collect the illegal interest and fees claimed due under the terms of the HELOC.

## **CLASS ALLEGATIONS**

36. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of the following classes of which she is a member:

> All consumers residing in the United States of America with the exception of Massachusetts who: (1) had a HELOC substantially in the form of the Countrywide HELOC; 2) that was assigned to a creditor at a time when it was in default; 3) whose servicing rights were acquired or assigned to Shellpoint at a time when the HELOC was in default; 4) who were not sent monthly periodic statements; 5) and for whom Shellpoint and/or its agents have collected or attempted to collect interest, late fees, and/or collection costs for the time periods when the consumer was not receiving monthly periodic mortgage statements within the 6 years prior to the filing of the Complaint up through the date of class certification.

37. Plaintiff further brings this action on behalf of the following subclasses each of which she is a member:

a) <u>Pennsylvania Breach of Contract Subclass</u>: All consumers residing in the United States of America with the exception of Massachusetts who: (1) had a HELOC substantially in the form of the Countrywide HELOC; 2) that was assigned to a creditor at a time when it was in default; 3) whose servicing rights were acquired or assigned to Shellpoint at a time when the HELOC was in default; 4) who were not sent monthly periodic statements; 5) and for whom Shellpoint and/or its agents have collected or attempted to collect interest, late fees, and/or collection costs for the time periods when the consumer was not receiving monthly periodic mortgage statements within the 4 years prior to the filing of the Complaint up through the date of class certification.

b) <u>Pennsylvania FCEUA Subclass:</u> All consumers residing in the United States of America with the exception of Massachusetts who: (1) had a HELOC substantially in the form of the Countrywide HELOC; 2) that was assigned to a creditor at a time when it was in default; 3) whose servicing rights were acquired or assigned to Shellpoint at a time when the HELOC was in default; 4) who were not sent monthly periodic statements; 5) and for whom Shellpoint and/or its agents have collected or attempted to collect interest, late fees, and/or collection costs for the time periods when the consumer was not receiving monthly periodic mortgage statements within the 2 years prior to the filing of the Complaint up through the date of class certification.

c) <u>FDCPA Subclass:</u> All consumers residing in the United States of America with the exception of Massachusetts who: (1) had a HELOC substantially in the form of the Countrywide HELOC; 2) that was assigned to a creditor at a time when it was in default; 3) whose servicing rights were acquired or assigned to Shellpoint at a time when the HELOC was in default; 4) who were not sent monthly periodic statements; 5) and for whom Shellpoint and/or its agents have collected or attempted to collect interest, late fees, and/or collection costs for the time periods when the consumer was not receiving monthly periodic mortgage statements within the 1 years prior to the filing of the Complaint up through the date of class certification.

38.     **Numerosity.** **Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. Upon

information and belief, SLS/Shellpoint services thousands of discharged HELOCS and subjects all of them to the same procedures for the assessment of interest, transmittal of monthly billing statements, and procedures for calculating the amount due in form acceleration notices. Upon information and belief, BNYM owns thousands of mortgage loans, including tranches of HELOCs serviced by Shellpoint. Upon information and belief, more than forty of the homes securing these loans are located in Pennsylvania. The class members' names and addresses are identifiable through SLS/Shellpoint's internal business records, and they may be notified of this litigation by published or mailed notice.

39. **Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. **23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Shellpoint violated and is violating the Fair Debt Collection Practices Act; (2) whether Shellpoint is liable for its violations of the Fair Debt Collection Practices Act; (3) whether Shellpoint violated and are violating Pennsylvania law; (4) whether Shellpoint is liable for violations of Pennsylvania law; (5) the proper remedies for Defendant's legal violations.

40. **Typicality.** Fed. R. Civ. P. **23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. She is also entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

41. **Adequacy of Representation.** Fed. R. Civ. P. **23(a)(4)**. Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the class members that she seeks to represent. Plaintiff has retained counsel competent and experienced in consumer class-action litigation, and they intend to continue

to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the putative class members' interests. Neither Plaintiff nor her counsel have any interests that might cause them to not vigorously pursue this action.

42. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

## CLASS CLAIMS FOR RELIEF

### COUNT I:
### Declaratory Judgment Under 28 U.S.C. § 2201 (On Behalf of Plaintiff and the Class)

43. Plaintiff incorporates the preceding allegations.

44. Plaintiff and the putative class were not mailed regular periodic billing statements apprising them of the balances of their loans, in violation of federal and state law.

45. As a result, Defendant prevented Plaintiff and the putative class members from knowing that they had any obligation on the loans after bankruptcy discharge and making any

related decisions.

46. Defendant nonetheless is now attempting to collect interest and fees that they claim accrued during this period of time from Plaintiff and putative class members.

47. Plaintiff and members of the class are subject to ongoing harm absent a declaration that interest and fees are waived and/or unenforceable, including the accumulation of additional debt, adverse credit reporting of the invalid loans, and abusive collection practices.

48. The dispute and controversy is a justiciable matter that is not speculative, and a resolution by this Court will determine the rights and interests of the parties to the loan contracts as well as the validity, if any, of the disputed interest and fees,

49. Pursuant to 28 U.S.C. § 2201, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for resolving the ongoing attempted imposition of the interest and fees.

50. Accordingly, Plaintiff seeks a declaratory judgment that all interest and fees assessed to discharged HELOCs during any time in which SLS/Shellpoint or its predecessors-in-interest failed to provide periodic statements are waived and/or unenforceable.

### COUNT II:
### Violations of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq*.
### (On Behalf of Plaintiff and the Pennsylvania Claim Subclass)

51. Ms. Huratiak incorporates the preceding allegations.

52. Defendant is engaged in trade or commerce as that term is contemplated by the Act.

53. The conduct of Defendant in systematically and as a matter of routine practice failing to provide periodic billing statements to consumers for extended periods of time and then, suddenly and under direct threat of foreclosure, attempting to collect years' worth of allegedly

accrued interest and fees in violation of the HELOC in addition to the principal obligations by and through its agents and employees constituted an "unfair or deceptive practice" within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et. seq.*, in that, among other reasons, Defendant caused a likelihood of confusion or misunderstanding as to the amounts owed under the HELOC, 73 P.S. § 201-1(4)(xxi).

54. Plaintiff and the putative class members suffered a concrete injury in fact because of Shellpoint's and SLS's failure to send statements, including, for example, the assessment of retroactive interest and fees that they had no ability to prevent from accumulating and the lost equity in their homes.

55. In addition, some class members suffered actual damages when they paid improper interest and fees to Defendant for periods in which they did not receive statements.

### COUNT III:
### Violation of FDCPA, 15 U.S.C. §§ 1692e(2), 1692e(11), 1692f(1), 1692f(6)

56. Ms. Huratiak incorporates the preceding allegations.

57. Defendant Shellpoint is a debt collector under 15 U.S.C. § 1692f(6) of the FDCPA.

58. Shellpoint violated 15 U.S.C. 15 U.S.C. §§ 1692e(2), 1692e(11), 1692f(1), 1692f(6) by using false, deceptive, or misleading representation or means in connection with the collection of Plaintiff's HELOC debt by its foreclosure on Ms. Huratiak's property, including but not limited to violation of:

> a) § 1692e(2) by making a false representation of the amount and legal status of the debt when it listed an inaccurate outstanding balance and inflated amount to cure the default.
>
> b) § 1692e(11) by failing to disclose that they were assessing fees upon Ms. Huratiak.

c) § 1692f(1) by unlawfully assessing fees to Ms. Huratiak for a zombie mortgage.

d) § 1692f(6) by threatening foreclosure and initiating foreclosure upon Ms. Huratiak.

59. Because of Shellpoint's violations of 15 U.S.C. § 1692e, Ms. Huratiak suffered actual damages, including the cost of defending the foreclosure action, loss of equity in the amount of unlawful interest assessed against her HELOC account, and significant emotional distress.

60. Based on Shellpoint's violation of § 1692e, Ms. Huratiak is entitled to actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

## COUNT IV - BREACH OF CONTRACT
### (On behalf of Plaintiffs and the Class)

61. Plaintiff incorporates the preceding paragraphs herein. This claim is brought on behalf of the Plaintiff individually and on behalf of the Class.

62. As described herein, Plaintiff and the Proposed Class members formed contracts with BNYM's predecessor in interest, Countrywide Home Loans, Inc. through Standard HELOC instruments, which instruments were assigned to the Trust and BNYM, and the servicing rights thereto to SLS and then Shellpoint.

63. By failing to provide periodic billing statements to consumers for extended periods of time and then attempting to collect years' worth of purported accrued interest and fees in addition to the principal obligations, Defendant breached its contract with them.

64. By its aforesaid conduct, Defendant breached the terms of the HELOCs it had with the Plaintiff and the members of the Proposed Classes, including any implied or express warranties therein, and acted in bad faith.

65. Defendant has wrongfully, recklessly, and/or intentionally breached the covenant of good faith and fair dealing by denying Plaintiffs and the members of the Proposed

Classes the benefits to which they bargained for in their HELOC contracts.

66. Defendant's breaches of the covenant of good faith and fair dealing have proximately and directly caused damages to the Plaintiff and the Class.

**COUNT V --**
**Violations of the Fair Credit Extension Uniformity Act (FCEUA)**
**73 P.S. § 2270.1 et. seq.**
**And the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**(UTPCPL)**
**73 P.S. § 201-1 et. seq.**

67. Plaintiff incorporates the preceding paragraphs herein. This claim is brought on behalf of the Plaintiff individually and on behalf of the Class.

68. Defendant participated in the unlawful collection demands for interest and fees in violation of the HELOC and the other illegal acts described above.

69. Defendant is a "debt collector" as defined by 73 P.S. § 2270.3 of the FCUEA.

70. Plaintiffs are "consumers" as defined by 73 P.S. § 2270.3 of the FCUEA.

71. All the above collection contacts by Defendant were "communications" relating to a debt as defined by 73 P.S. § 2270.3 of the FCUEA.

72. Insofar as Defendant sought to collect through an unlawful foreclosure filing an inaccurate outstanding balance and inflated amount to cure the HELOC default, these and any other foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FCEUA and UTPCPL, including but not limited to 73 P.S. § 2270.4(a)&(b), as evidenced by the following conduct:

   a) Using false representation or deceptive means to collect a debt or obtain information about a consumer, § 2270.4(a); and

   b) Making false, deceptive, or misleading representations with regard to the character, amount or legal status of the alleged debt, § 2270.4(a).

73. Defendant's acts as described above were done with malicious, intentional,

willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law with the purpose of coercing Plaintiff to pay a false and inflated debt.

74. As a result of the above violations of the FCUEA and UTPCPL, Plaintiffs suffered ascertainable loss of equity in the home and costs of defending the foreclosure action entitling her to an award of statutory, actual and treble damages and attorney's fees and costs.

Dated: November 24, 2025            /s/ *James A. Francis*
James A. Francis
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com

ROBERT P. COCCO, P.C.
By:  Robert P. Cocco, Esquire
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-351-0200
bob.cocco@phillyconsumerlaw.com

*Counsel for Plaintiff and the Classes*