**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LALONNIE C. HURATIAK,<br>Plaintiff,<br><br>v.<br><br>NEWREZ LLC d/b/a SHELLPOINT<br>MORTGAGE SERVICING, *et al.*,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil No. 5:25-cv-06691-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.** **September 15, 2026**

## I. OVERVIEW

Lalonnie C. Huratiak ("Plaintiff"), individually and on behalf of others similarly situated, filed a Second Amended Class Action Complaint ("SAC") against NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and the Bank of New York Mellon ("BNYM"). Defendants have a filed a motion to dismiss. For the following reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## II. FACTUAL BACKGROUND[1]

In 2007, Plaintiff obtained a Home Equity Line of Credit ("HELOC") and a second mortgage from Countrywide Home Loans ("Countrywide") in the amount of $93,900.00. SAC (ECF No. 28) ¶ 8. The standardized form contract utilized by Countrywide for HELOCs and

[1] The Court recites the facts as alleged in the SAC.

second mortgages required that Countrywide provide Plaintiff with periodic statements of all amounts due prior to Plaintiff's obligation to pay. *Id.* ¶¶ 9–10.

In October 2011, Plaintiff stopped making payments on the HELOC and subsequently filed for bankruptcy in 2013. *Id.* ¶ 11. At the time that Plaintiff filed for bankruptcy, the balance due on the HELOC was approximately $89,000.00. *Id.* ¶ 12. After Plaintiff defaulted on the loan, and at the time Plaintiff filed for bankruptcy, Specialized Loan Servicing LLC ("SLS") acquired the servicing rights to the loan. *Id.* ¶¶ 13–14. In or around 2013, BNYM acquired the Countrywide HELOC while it was in default. *Id.* ¶ 20. In Plaintiff's bankruptcy, a "Collection Agreement" attached to BNYM's Proof of Claim identified SLS as the servicer and outlined its "collection and recovery responsibilities of certain Charged Off Loans." *Id.* ¶ 15. Plaintiff's mortgage, filed with the BNYM Proof of Claim, contains a "No Loss of Rights" clause permitting the creditor to negotiate or assign the Note and Mortgage, and to add or release parties or property obligated thereunder, without releasing the original parties or forfeiting its rights in the Premises. *Id.* ¶ 17. Plaintiff's bankruptcy was dismissed in 2015. *Id.* ¶ 21.

In or around 2012, Plaintiff received no further monthly periodic statements for the HELOC. *Id.* ¶ 19. Plaintiff received no further correspondence regarding the HELOC until she received a Notice of Default and Notice of Intent to Foreclose ("the Notice") from SLS on December 10, 2021. *Id.* ¶ 22. Because Plaintiff received no periodic statements or correspondence regarding the HELOC, she assumed that she had no obligation toward it. *Id.* ¶ 23. The Notice stated that Plaintiff must pay $63,934.63 to pay off missed payments on her HELOC accrued between 10/25/2011 and 12/10/2021, or the loan would be accelerated and her home referred to foreclosure. *Id.* ¶ 24. The amounts stated in the Notice were inflated as SLS assessed interest for

periods that an earlier servicer had waived.[2] *Id.* Under the contractual terms of the HELOC, the creditor's right to assess interest was dependent on the reciprocal obligation to provide periodic statements to Plaintiff. *Id.* The Notice failed to identify the owner of the HELOC. *Id.* ¶ 25.

On or around October 2024, Shellpoint purchased SLS along with its servicing assets. *Id.* ¶ 28. On November 26, 2024, Shellpoint, as the successor servicing agent, filed a foreclosure complaint against Plaintiff in the Northampton County Pennsylvania Court of Common Pleas claiming that she owed $182,332.96 to bring her second mortgage current. *Id.* ¶ 29. Of the sum owed, $92,394.76 was interest that SLS retroactively assessed for periods during which an earlier servicer had waived it, including the time in which Plaintiff did not receive monthly periodic statements. *Id.* Plaintiff was unaware that SLS was assessing interest on her loan because she never received periodic monthly statements despite the terms of the HELOC. *Id.* ¶ 32. SLS had a uniform practice of not sending monthly statements to borrowers whose HELOC loans were delinquent for a period of years after default. *Id*. Without periodic monthly statements that documented defaults and amounts accrued, Plaintiff alleges that she was unable to review accrued interest for accuracy, modify her loan, and cure one or more of the asserted amounts and/or defaults. *Id.* ¶ 34. The inflated and incorrect amounts assessed against Plaintiff encumbered her home equity, causing her to suffer a corresponding loss. *Id.* ¶ 35.

The foreclosure complaint was electronically signed by Robert Harrell, a "document verification specialist" for NewRez, LLC. *Id.* ¶ 36. NewRez, LLC, doing business as Shellpoint,

---

[2] The Court includes this allegation because it is drawn from the SAC, but notes that it is conclusory as pled. The SAC does not identify which periods were allegedly waived, by which servicer, or the basis for the waiver.

did not disclose its fiduciary capacity in the foreclosure complaint's caption or allegations.[3] *Id.* The foreclosure complaint alleges no assignment of the HELOC note; BNYM claims enforcement rights as holder of a note "endorsed in blank" (*i.e.* because the note was signed over without a specific payee, by virtue of BNYM holding the note, the note is payable to BNYM.). *Id.*

Because of Defendants' conduct, Plaintiff alleges that she suffered emotional distress and mental anguish. *Id.* ¶ 42. Further, pursuant to FED. R. CIV. P. 23, Plaintiff brings this action for herself and on behalf of the following classes of which she is a member: (1) all United States consumers who had a HELOC substantively similar to the Countrywide HELOC assigned to SLS for collection while in default, whose loan is now serviced by Shellpoint, and who either were not sent monthly statements during a period Shellpoint demanded payment, or were billed incorrect balances, arrears, or amounts owed by Shellpoint – within the four years before the SAC's filing through class certification; (2) all class members who received a collection demand from Shellpoint within the prior year of the SAC's filing ("FDCPA Subclass"); and (3) all class members residing in the Commonwealth of Pennsylvania against whom Defendants initiated foreclosure action where the named Plaintiff was BNYM as trustee, but the verification of the foreclosure complaint was signed by a representative of another entity without disclosing a fiduciary relationship, and/or the foreclosure complaint failed to conform to the Pennsylvania Rules of Civil Procedure ("Pennsylvania Foreclosure Subclass"). *Id.* ¶ 49.

---

[3] The verification of the foreclosure action contained a signature-block that provided: "NewRez LLC d/b/a Shellpoint Mortgage Servicing (f/k/a Specialized Loan Servicing LLC) as servicer for the Bank of New York Mellon f/k/a The Bank of New York as Indenture trustee for CWHEQ Revolving Home Equity Loan Trust, Series 2007-A[.] By Robert Harrell, Document Verification Specialist[.]" Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint ("Defs.' Mot.") (ECF No. 30) at 7.

Plaintiff filed the SAC seeking relief on four counts. Counts I and II are brought on behalf of the class against Defendant Shellpoint for: (1) violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692e(2)(A), e(5), e(10), e(13), and f(1); and (2) breach of contract. *Id.* ¶¶ 55–66. Count III is brought on behalf of Plaintiff individually and the class against Defendant BNYM for breach of contract. *Id.* ¶¶ 67–73. Plaintiff brings Count IV individually against both Defendants for a declaratory judgment pursuant to 28 U.S.C. § 2201. *Id.* ¶¶ 87–94.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## IV. DISCUSSION

Defendants move to dismiss each count of the SAC with prejudice. *See generally* Defs.' Mot. (ECF No. 30). First, Defendants argue that Count I should be dismissed because the FDCPA does not impose an obligation on debt collectors to send periodic statements, Defendants complied with the procedural requirements imposed by the Pennsylvania Rules of Civil Procedure, and BNYM's attempted enforcement of the note was proper. *Id.* at 5–8. Second, Defendants contend that Counts II and III should be dismissed because Shellpoint cannot be liable for a breach of contract claim for which it was not a party, Plaintiff had previously materially breached the contract, Plaintiff cannot identify damages proximately caused by the breach, and Plaintiff's theory that prior interest had been waived is conclusory and unfounded. *Id.* at 8–17. Third, Defendants contend that Count IV should be dismissed because Plaintiff's substantive claims are meritless. *Id.* at 17–18. Finally, Defendants argue that because Plaintiff's individual claims are meritless, Plaintiff's class claims should be dismissed. *Id.* at 18. The Court reviewed and considered Defendants' Supplemental Authority in further support of their Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 43) but finds it unpersuasive in the instant review. The Court will address each basis for dismissal in turn.

**A. Violation of the FDCPA (Count I)**

Plaintiff alleges that Defendant Shellpoint violated the FDCPA by: (1) making false representations of the amount and of the legal status of the debt when it sought to collect on amounts for periods when Plaintiff was not sent a periodic statement and for incorrect/inflated amounts in violation of §§ e(2) and e(10); (2) threatening to sue Plaintiff for amounts that she did not owe under the HELOC in violation of § e(5); (3) collecting amounts not permitted under the HELOC while Plaintiff was not sent monthly statements, and inflated amounts not permissibly

charged under the HELOC in violation of § f(1); and (4) by failing to disclose the real party of interest and failing to comply with the Pennsylvania Rules of Civil Procedure in violation of §§ e(10) and e(13). SAC (ECF No. 28) ¶ 57.

Woven throughout Defendants' argument is the proposition that the FDCPA imposes no affirmative obligation on debt collectors to send periodic statements. *See* Defs.' Mot. (ECF No. 30) at 5–6. Defendants further contend that the verification's signature-block disclosure brought Shellpoint into compliance with the Pennsylvania Rules of Civil Procedure. *See id.* at 7–8.

Defendants correctly argue that the FDCPA does not require debt collectors to send periodic statements. *See generally* 15 U.S.C. § 1692. But the FDCPA provides "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Accepting the allegations in the SAC as true, and construing all inferences therefrom in the light most favorable to Plaintiff, Shellpoint's failure to send periodic statements to Plaintiff, after initially providing such statements, could be considered a deceptive or misleading debt collection practice in violation of the FDCPA.

The Pennsylvania Rules of Civil Procedure provide that "[a] plaintiff may sue in his or her own name without joining as plaintiff or use-plaintiff any person beneficially interested when such plaintiff is acting in a fiduciary or representative capacity, which capacity is disclosed in the caption and in the plaintiff's initial pleading." Pa. R.C.P. No. 2002(b)(1). Here, Shellpoint was acting in a representative capacity of BNYM, and that capacity was disclosed in the signature-block of the verification of the foreclosure complaint. *See* Defs.' Mot. (ECF No. 30) at 7. But Pa. R.C.P. No. 2002(b)(1) requires that such disclosure appear in the "caption" and "plaintiff's initial pleading." Pa. R.C.P. No. 2002(b)(1). Viewed in the light most favorable to Plaintiff, Defendants'

failure to fully comply with the Pennsylvania Rules of Civil Procedure supports a claim under §§ 1692e(10) and 1692e(13).

Because Rule 12(b)(6) tests only the sufficiency of the pleadings viewed in the light most favorable to the non-moving party, the allegations in the SAC clear that bar. This Court's holding is confined to the sufficiency of the pleadings and does not resolve whether Plaintiff can later produce evidence sufficient to establish the deceptive or misleading character that the FDCPA requires. Accordingly, Count I survives at this juncture.

**B. Breach of Contract Against Shellpoint (Count II)**

Plaintiff argues, on behalf of herself and the class, that Shellpoint breached the terms of the HELOC by failing to provide periodic statements and then attempting to collect fees and interest accrued during that period, and by attempting to collect inflated amounts. SAC (ECF No. 28) ¶¶ 60–66. Plaintiff, on behalf of herself and the class, further incorporates those same allegations against BNYM for breach of contract. *Id.* ¶¶ 67–73.

Defendants argue that Shellpoint, not being a party to Plaintiff's HELOC contract, is not bound by its terms. Defs.' Mot. (ECF No. 30) at 9–11. They further contend that Plaintiff's default, which materially breached the HELOC, precludes her from bringing breach of contract claims for Defendants' subsequent breach. *Id.* at 11–12. Finally, Defendants argue Plaintiff has neither pled nor can show damages to support a breach of contract claim. *Id.* at 12–16.

Under Pennsylvania law, a borrower cannot state a breach of contract claim against a third-party mortgage servicer based solely on the mortgage or note, because the servicer is not a party to that contract. *See Greene v. Shellpoint Mortg. Servicing*, No. 5:20-CV-00822, 2020 WL 5810057, at *2 (E.D. Pa. Sept. 30, 2020) (dismissing breach of contract claim where plaintiffs

alleged no contract beyond the mortgage itself and the mortgage servicer was not a party to the mortgage contract). In *Greene*, as here, the servicer was not a party to the contract. It follows that Shellpoint is not bound by the terms of the HELOC.

Accordingly, Plaintiff's claim for breach of contract against Shellpoint (Count II) is dismissed with prejudice because amendment would be futile; Plaintiff and the proposed class cannot establish a contractual relationship between herself and Shellpoint.

**C. Breach of Contract Against BNYM (Count III)**

"To allege breach of contract under Pennsylvania law, a plaintiff must show: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182–83 (3d Cir. 2015) (citation omitted). Here, Plaintiff has sufficiently alleged each element of a breach of contract claim against BNYM. First, Plaintiff alleges the existence of a valid HELOC agreement between the parties, which required BNYM to provide Plaintiff with monthly periodic statements. Ex. A (ECF No. 28-1) at 1. Second, Plaintiff alleges that BNYM breached this obligation by failing to provide periodic statements for approximately nine years, from 2012 until Plaintiff received the Notice in 2021. *See* SAC (ECF No. 28) ¶¶ 19, 21. Plaintiff further alleges that, during this period, BNYM assessed interest against the account and later attempted to collect amounts that Plaintiff contends were inflated. Although Plaintiff breached the terms of the HELOC by defaulting on her payment obligations, the Court is hesitant to dismiss Plaintiff's breach of contract claim at this early stage given the broader context of the loan and BNYM's repeated failure to send periodic statements. Accepting the factual allegations in the SAC as true, as it must at this stage, the Court

notes that Plaintiff received no correspondence regarding her HELOC for nine years, from 2012 until receiving the Notice in 2021. *See* SAC (ECF No. 28) ¶¶ 19, 21.

Third, Plaintiff has sufficiently alleged damages resulting from this breach. Specifically, Plaintiff alleges that, because she did not receive periodic statements, she was unaware that interest continued to accrue and had no opportunity to address the balance before BNYM sought to collect more than $90,000.00 in interest. *Id.* ¶¶ 32, 33. Although Defendants argue that Plaintiff's waiver theory is conclusory, Defs.' Mot. (ECF No. 30) at 16–17, Plaintiff need only plausibly allege damages at this stage. Nonetheless, the interest assessed against Plaintiff without her knowledge, in excess of $90,000.00, and BNYM's attempted collection of that interest, satisfy the damages prong of a breach of contract claim at this early stage.

As to Count III, the factual allegations in the SAC are sufficient to survive Defendants' Motion (ECF No. 30) at this very early stage. That said, the Court leaves for another day the validity of Defendants' arguments, including any material breach of the HELOC by Plaintiff.

### D. Declaratory Judgment Pursuant to 28 U.S.C. § 2201 (Count IV) and Class Claims

Defendants contend that because Plaintiff's individual substantive claims fail on the merits, Plaintiff's declaratory judgment claim (Count IV) must be dismissed. *Id.* at 17–18.

Because Counts I and III of the SAC survive Defendants' Motion to Dismiss, Count IV survives as well. *See Clemens v. ExecuPharm, Inc.,* 678 F. Supp. 3d 629, 639 (E.D. Pa. 2023) (explaining that where a plaintiffs' substantive claims overlap with a plaintiff's declaratory judgment claim, "courts may refuse to dismiss the declaratory judgment claim if the plaintiff's 'remaining claims have not been fully developed . . . [and] the Court cannot fully evaluate the

extent of the overlap to determine whether declaratory judgment would serve [any] useful purpose in clarifying the legal rights and relationships at issue'.") (quoting *Baker v. Deutschland GmbH*, 240 F. Supp. 3d 341, 350 (M.D. Pa. 2016)). Therefore, Count IV of the SAC will not be dismissed.

Defendants argue that because Plaintiff's individual claims fail, Plaintiff can no longer serve as class representative, and no putative class member may replace Plaintiff in that role. *See* Defs.' Mot. (ECF No. 30) at 18. Accordingly, Defendants conclude that the SAC's class claims should be dismissed. *See id.* But because Plaintiff's individual claims as to Counts I and III survive dismissal, this argument is moot as to those Counts.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to Count II. The Motion is **DENIED** as to Counts I, III, and IV. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge